UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RITA DE VOLDER, | ) |
| Plaintiff | ) ) ) |
| v. | ) ) ) CAUSE NO. 3:02-CV-689 RM |
| MADISON CENTER AND HOSPITAL, | ) ) ) |
| Defendant | ) |

OPINION AND ORDER

This matter comes before the court on Madison Center's motion for summary judgment on all claims brought against it by Ms. Rita De Volder under Title VII of the Civil Rights Act of 1964 and the American with Disabilities Act. For the reasons that follow, the court grants the defendant's motion on all claims.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The

mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 841-842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

BACKGROUND

The court draws the following facts from the record, specifically from Ms. De Volder's statement of material facts, and construes them in the light most favorable to Ms. De Volder, the nonmoving party. Madison Center is a non-for-profit organization with its central location in South Bend, Indiana. It provides several types of social assistance, including residential services, drug/alcohol rehabilitation, and in-patient/out-patient mental health services for all ages. Ms. De Volder worked at the Madison Center from December 10, 2001 through March 28, 2002 as a Semi-Independent Living Program Case Manager. This program specifically provides services to individuals who require assistance with certain aspects of their life, such as budget planning, checkbook balancing, grocery

shopping, and filling prescription medication. Case managers perform and teach these skills with the goal that clients could function semi-independently.

Ms. De Volder began her employment with Madison Center in early December 2001, when she attended various orientation and training sessions. Beginning in late December, Ms. De Volder began assuming client responsibilities, and reported to Sharan Dale, the Coordinator of Madison Center's Semi-Independent Living Program. For several of the following months, Ms. De Volder and her supervisors met several times to discuss improving Ms. De Volder's job performance. During this time, Ms. De Volder also filed several internal grievances stemming from her feelings of being mistreated by Madison Center.

On March 22, 2002, Ms. De Volder filed a charge of discrimination with the Equal Employment Opportunity Commission alleging Madison Center discriminated against her on the basis of her depression. On March 28, 2002, Madison Center terminated Ms. De Volder's employment, citing her allegedly ongoing deficient performance, and on April 9, Ms. De Volder filed a second EEOC charge alleging Madison Center unlawfully discharged her in retaliation for complaining about the disability discrimination. On June 27, the EEOC issued a notice of suit rights to Ms. De Volder, who then initiated this lawsuit.

DISCUSSION

As an initial matter, Ms. De Volder claims she was discriminated against on the basis of a disability in violation of the American with Disabilities Act ("ADA"),

3

and that when she lawfully complained of this discrimination, she was retaliated against in violation of Title VII of the Civil Rights Act of 1964. The arguments upon which Ms. De Volder bases her claims, though, are cognizable only under the ADA, and not Title VII. While the court accords a certain amount of leniency to Ms. De Volder as a *pro se* plaintiff, it cannot create causes of action where they do not exist. To the extent Ms. De Volder asserts any claims under Title VII, Madison Center is entitled to summary judgment on them.

### *DISCRIMINATION UNDER THE ADA*

Ms. De Volder claims that Madison Center unlawfully discriminated against her because of her disability, which she identifies as depression. Ms. De Volder may proceed on this claim using either the direct or indirect method of proof. Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004). Specifically, the two ways of proving discrimination based on a disability are: "first, by direct evidence (taking the form of, "I fired you because of your ... disability") or second, through indirect evidence." Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Ms. De Volder attempts to make her claim under both methods.

Under the direct method the court must determine whether Ms. De Volder has presented "sufficient evidence to allow a rational jury to reasonably conclude that but for [her] ... disability, [Madison Center] would not have fired [her]." Robin v. Espo Eng'g Corp., 200 F.3d at 1089. Such evidence typically would come in the form of direct evidence, and Ms. De Volder argues that Ms. Sharan Dale's

4

statement that "people with mental illness or those in wheelchairs should not work in this Program" directly proves Madison Center's intent to discriminate against her. Ms. Dale's statement is not direct evidence because it doesn't establish "without resort to inferences from circumstantial evidence" that Madison Center discriminated against her because of her disability. Stone v.City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002).

For Ms. De Volder to proceed under the direct method, the court would have to infer from Ms. Dale's comment Madison Center's invidious intent to discriminate against her personally on the basis of her depression. When viewed in the context of the uncontroverted record, Ms. Dale's statement arose from a discussion that took place during a case management group staff meeting, and was made in reference to all employees working in the Semi-Independent Living Program. The statement wasn't specifically directed to Ms. De Volder, and so is not adequate evidence alone of Madison Center's intentional discrimination. Because the record does not contain any other evidence from which Ms. De Volder could proceed under the direct method, the court must analyze Ms. De Volder's claim under the indirect method of proof.

Under the indirect method, Ms. De Volder can survive summary judgment if she presents evidence "from which a rational trier of fact could reasonably infer that the defendant had fired [her] because" of her disability. Robin v. Espo Eng'g Corp., 200 F.3d at 1089-90. Ms. De Volder must show that "(1) [s]he is disabled under the ADA; (2) [s]he is qualified to perform the essential functions of [her] job

5

with our without reasonable accommodation; and (3) [s]he has suffered from an adverse employment decision because of the disability." Buie v. Quad/Graphics, Inc., 366 F.3d at 503. If Ms. De Volder makes this prima facie case of discrimination, then the burden of production shifts to Madison Center "to articulate a nondiscriminatory reason for each adverse employment action." Id. Finally, if Madison Center meets its burden, Ms. De Volder "must prove by a preponderance of the evidence that [Madison Center's] proffered reasons were a pretext for intentional discrimination." Id.

Madison Center first argues that Ms. De Volder cannot make a prima facie case for discrimination because she cannot show she is disabled under the ADA. The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record fo such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Ms. De Volder argues that she fits either definition (A) or (C).

For Ms. De Volder to be actually disabled under 42 U.S.C. § 12102(2)(A), she must show that she "1) has an impairment that 2) substantially limits one or more of the major life activities." Krocka v. City of Chicago, 203 F.3d 507, 512 (7th Cir. 2000). As to the first prong, Ms. De Volder might show that her depression is an impairment through evidence of a medical diagnosis to that effect, id., but the only medical evidence in the record of Ms. De Volder being diagnosed with depression is a copy of a psychiatrist's appointment card along with an Osco Drug refill label

6

for twelve tablets of Nardil. The court would be hesitant to deem this sufficient evidence upon which a rational juror could conclude Ms. De Volder was diagnosed with depression, but for the purposes of this motion it need not make such a determination. By Ms. De Volder's own admission in her response to the summary judgment motion, she is not substantially limited in any major life activity by her depression. Moreover, the record contains unrebutted statements that Ms. De Volder's depression has not limited her day-to-day ability to care for herself, her children, go to work, prepare meals, pay her bills, budget, grocery shop, and take her children to school. Ms. De Volder is not actually disabled as defined by the ADA.

Ms. De Volder also argues she was "regarded as" disabled by Madison Center, which would render her disabled under 42 U.S.C. § 12102(2)(C). "The regarded as prong of the ADA's disability definition is intended to provide a remedy for discrimination based on misperceptions about the abilities of impaired persons." Krocka v. City of Chicago, 203 F.3d at 513-514. While the record indicates Ms. Dale may have checked repeatedly with Ms. De Volder to ensure she wasn't too stressed or overwhelmed with the responsibilities of the job, this is insufficient to establish that Madison Center held a misperception of Ms. De Volder's abilities. By Ms. De Volder's own statements she never received formal training, and was having some difficulties with the requirements of the job. The record doesn't contain ample evidence that Madison Center held any misperceptions about Ms. De Volder's ability to work as a Semi-Independent

7

Living Program case manager or the extent of her alleged depression, and thus did not regard Ms. De Volder as disabled.

Even if the court were to assume that Ms. De Volder satisfied the requirements of a prima facie case with respect to her discrimination claim, *see* United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."); Hall v. Bodine Elec. Co., 276 F.3d 345, 357-358 (7th Cir. 2002) ("[W]e will assume [plaintiff] has made out a prima facie case, and move directly to the question of pretext. We do so not because we are convinced Hall has established a prima facie case ... but because our analysis of that issue would substantially overlap with the question of pretext."), she still couldn't prevail because she hasn't presented evidence from which a jury could reasonably infer or conclude that Madison Center's reason for terminating her was pretextual. *See* Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 508 (7th Cir. 2004).

Pretext means "a lie, specifically a phony reason for some action," Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995), completely lacking a factual basis, *see* Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000), and "unworthy of credence, thus raising the inference that the real reason is discriminatory [or retaliatory]." Essex v. United Parcel Serv., 111 F.3d 1304, 1309 (7th Cir. 1997). To demonstrate pretext, Ms. De Volder must produce ample evidence that supports the claim that the proffered reason of the company wasn't its true

8

motivation or sufficient to motivate its actions. O'Neal v. City of New Albany, 293 F.3d 998, 1005 (7th Cir. 2002). Ms. De Volder cannot do so.

Madison Center says it terminated Ms. De Volder because she wasn't performing up to its legitimate expectations of a case manager. The unrebutted record indicates Ms. De Volder had difficulty balancing some of her clients' checkbooks, was not billing an adequate amount of hours, was (infrequently) late to client meetings, refused to accept two clients, and shared personal information with clients in violation of Semi-Independent Living Program policy. The record contains no evidence indicating that Madison Center's reliance on these incidents when terminating Ms. De Volder was done in bad faith. *See* Green v. National Steel Corp., 197 F.3d 894, 899 (7th Cir. 1999) ("if an employer acted in good faith and with an honest belief, [the court] will not second-guess its decisions"). Thus, Madison Center is entitled to summary judgment on Ms. De Volder's discrimination claim under the ADA.

### *RETALIATION UNDER THE ADA*

As to Ms. De Volder's retaliation claim, once again she may thwart summary judgment by using the direct or indirect method of proof. Under the direct method, the she must produce direct evidence that she suffered an adverse employment action because she had engaged in a protected activity. Hottenroth v. Village of Slinger, 388 F.3d 1015, 1028 (7th Cir. 2004). "Direct evidence essentially requires an admission by the decision maker that his actions were based on the prohibited

9

animus." Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005)(quotations and citations omitted). Ms. De Volder can't proceed under this method because there is no direct evidence in the record that Madison Center terminated her because of she engaged in statutorily protected activity.[1]

Under the indirect, burden-shifting method, Ms. De Volder must establish the four elements of a McDonnell Douglas prima facie case: (1) she engaged in statutorily protected activity, (2) she performed her job according to her employer's expectations, (3) she suffered a materially adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002); *see also* Stone v .City of Indianapolis Pub. Utils. Div., 281 F.3d at 644 (adapting the McDonnel Douglas method of proof to ADA retaliation cases). Absence of any element of the prima facie case is fatal to a plaintiff's claim. Id.

Ms. De Volder hasn't identified a similarly situated employee who did not engage in statutorily protected activity who was treated any better than Ms. De Volder. As such, Ms. De Volder cannot make a prima facie case, and Madison Center is entitled to summary judgment on Ms. De Volder's retaliation claim.

CONCLUSION

---

[1] The court notes the close proximity in time between when Ms. De Volder complained of the alleged disability discrimination and her termination. Without more, this temporal proximity does not create a genuine issue of material fact. *See* Buie v. Quad/Graphics, Inc., 366 F.3d at 502; *see also* Culver v. Gorman & Co., 416 F.3d at 547.

For the reasons set forth above, the court GRANTS Madison Center's motions for summary judgment [Doc. No. 28] on all claims. The court ORDERS this case dismissed and VACATES any remaining trial related deadlines.

SO ORDERED.

ENTERED: October 3, 2005

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court